The first case is Cornelius v. Luna All right. Good morning, Mr. Dembezik. Dembezik. Dembezik. There's two ways to say it. All right. Hopefully I'll get one of them right. All right. You have reserved two minutes for rebuttal, and you can begin whenever you're ready. Yes, Your Honor. Good morning. May it please the Court. My name is Mr. E. Allen Dembezik, and I'm arguing today on behalf of the appellants. We are here to ask for that this Court reverse the denial of the motion for some judgment, which we are arguing based upon qualified immunity on the excessive force claim. And we're asking the Court to do this for four specific reasons. First, it is our position that the District Court fail to consider undisputed facts by looking at the totality of the circumstances. Two, gloss over material portions of the plaintiff's own version of the facts. Three, improperly characterize the takedown of the plaintiff's reground. And four, fail to analyze qualified immunity in the specific context of this case. Aren't all of those arguments, or at least three of those arguments, arguments about how the District Court viewed the facts? Yes. I'm going to say how they viewed, but we did not consider the totality of the facts. And that's why I was starting to go to the Barnes v. Felix case, which the United States Supreme Court recently looked at. Can I just ask you, before you do that, let's just see if we can agree on what the clearly established law is, and then we can go from there. I wrote in Jones, based upon Tracy, that if you use significant force against someone who's no longer resisting, it violates the Fourth Amendment, right? That's the clearly established law, right? Significant force, correct. All right. So here, let's just start with yanking him up by the cuffs. That's his allegation. I know there's a dispute about that. You say in your brief, and I agree, that you can't see on the video if he's yanked up or not by the cuffs. But we have to assume he is, right? Correct. All right. All right. And just to go back to Judge Robinson's question, the District Court said there were issues of fact, disputed issues of fact as to whether or not at that point, forget about what happened earlier, at that point, whether or not he was resisting at all, such that they could yank him up by the cuffs in that manner. So why do we have jurisdiction to decide that issue? Right. Because, again, there is no issue of fact, because I'm relying entirely on the plaintiff's version, which the Court did not consider. Well, the plaintiff's version of that, which to take down aside, was that he wasn't resisting. The video shows, I watched the video, for a minute, he's on the ground. There's six officers walking around him. Nobody is touching him. He's face down on the ground. He's cuffed. He has leg irons. He has a spit mask. They then sit him up for another minute. They're all walking around. He's doing nothing. He's not moving. He's crying, apparently. And then that's when he says, when the medic walks in, they yanked me up by the cuffs. Am I accurately describing? Right, Your Honor. Okay. But that's not the law. I didn't say in Jones that if, in fact, he was resisting at some point, when he's no longer resisting, you can still use significant force. We didn't say that in Jones. And you said something really unusual at the end of your brief that I was quite surprised to see. You didn't cite any law that says if someone's resisting at some point, if they're no longer resisting, you can use pain to distract them from further resisting. Is that what you're saying? I didn't say they could. I said that could be a scenario where pain compliance. Pain compliance can distract them from further resistance. It would be objectively reasonable. Where have we said that even if someone's no longer resisting, you can place them in pain intentionally just to make sure they don't start resisting again? Right. And, again, that's why I keep going back to Theodore's case. You need to look at his interactions during this entire time, his argumentative nature from the get-go, his failure to comply with verbal orders, all of this. And, also, there is a complaint that he did not hold. I know, but failure to comply with verbal orders, as Judge Robinson pointed out, that's all in dispute. There's no sound, right? No, there's not. I cited a plaintiff's own testimony. He admits on three occasions he failed to comply with verbal orders. A plaintiff's own testimony admits that. And that is cited in my brief. Well, verbal orders at some point along the way are verbal orders at the moment that matters. Right up to the moment of him being taken to the firm. That's he kept. That's 20 minutes in. That's 20 minutes before they pick him up by the cuffs. 20 minutes goes by. Understood. 20 minutes goes by. Right. I was talking about the ticket. Well, I understand that. But the point that Judge Bianco was asking about was 20 minutes later. I mean, they take him down because it takes him 20 seconds to put his right hand up on the wall. The time he's asked to do it. 20 seconds is what it takes him to do it. He puts his hand up on the wall. And then Officer Curry comes over and gets close to him. One of the officers swats her away. Swats her away. Well, I watched it. Okay. Swats her away. Excuse me. Swats her away. And then she comes and grabs his hand while it's on the wall. And then he pulls his hand away. No. He gestured towards Officer Curry and that's when she grabs him. All right. You're correct. He gestures towards you. Because he's talking to her. All right. And then she grabs his arm. And then he gets thrown to the ground. And then he's taken to the ground. So separate that out. Then 20 minutes goes by. Right. While he's on the ground. Right. At one point in time, he sits up for a few seconds. Yeah. And then he's gently rolled back down to the ground. Right. All right. And he lays with his hands behind his back, laying on his chest for 20 minutes. 20 minutes. Right. And then the officers surround him. And then he's lifted up. You can't see how he's lifted up. Right. And so the question is, is 20 minutes of not resisting long enough? It's not long enough. Not? Not long enough.  And then he lets out a kick in his forearm. He goes across. He met officers and engaged them. I couldn't see that. It's hard to see that. It's hard to see that whether perhaps someone was laid on their chest for 20 minutes is simply uncomfortable. And then Judge Hall rightly said at DA 191 that she found that there was an issue of fact as to whether he was resisting or not. Right. Because she did consider all the facts of the plaintiff's own testimony. That's my whole point is she did not consider all the facts of her own testimony. What were the facts of his testimony that she didn't consider? Sure. And I cite these in my brief. At 2 minutes and 33 seconds, I'm citing to DA 55, I was asking him to turn around, step on the line, face the wall, place both hands on the wall if he failed to comply. That's number one. Number two, at 2 minutes and 43 seconds, I was gesturing to the wall and continually asking him to place both hands. He normally places his left hand, not his right hand. That's number two, failure to comply. Then next he, I was gesturing to the wall at 2 minutes and 50 seconds, asked Cornelius to put both hands on the wall. He fails to do it. Number three, noncompliance. Number four. He doesn't get credit for what he had done until he puts his hand on the wall. But again. Is that because he took his time doing that, that he's resisting? Once one complies, is one continuing to resist? Well, I mean, he didn't comply because he didn't want to see it. He put up there for a couple seconds, removed it, and gestured towards the officer. So that's where I get to the next piece of noncompliance. I don't know. When you say this is all undisputed, but in his deposition, he said the police officer has asked you multiple times to put your right hand on the wall. Correct? He says false. He says false. Right? At one point, a police officer came over and tried to put your hand on the wall. Correct? False. Right. But then when I go through it step-by-step with him, in his deposition, again, I'm citing to defendants' pages 55 through 58, which is where I'm asking him specific questions. Did they do this? Did they do this? He's saying either yes or I don't know. Isn't there also an issue? I know this wasn't the basis of the district court's decision, which said there's a disputed factor whether there was any resistance at all. But even if there was some level of resistance that he didn't, for 10 seconds or 20 seconds, put his right hand immediately back on the wall, the video shows that his left hand remained on the wall at all times, his feet stayed where they were, and that two officers were, I don't know, talking to him and trying to get him to potentially comply. And this other officer comes over and takes his left arm that's on the wall and does this takedown, very aggressive takedown under those circumstances. So why, even if there was some level of resistance, why is the notion also an issue of fact as to whether or not that level of force was necessary under the circumstances?  And again, I cited it in the case law, which says they don't comply with verbal orders to justify a takedown. I know, but there's a lot of cases where we've said just because someone is resisting doesn't allow you to do any degree of force, right? Right. Okay. And I also wanted to just go back to Your Honor's holding in the Jones case. You talked about significant force, such as a taser or a pepper spray. And pain compliance. A takedown is not pain compliance. So I think that I also want to make that point. I don't believe war is a Jones territory. This is not significant force. This is not a punch. Okay. A takedown is not. This is a takedown to the ground. But a takedown is not warranted for any level of resistance, right? You would agree with that?  And I cited cases in my brief that says it is. Any time someone resists in any way at all, verbal, any type of resistance, even if it's passive, you can aggressively take them to the ground? That's not what I'm trying to say. There are cases that say it is. It shows it's not clearly established that it is not. That's my whole point, Your Honor. But the factual issue here is whether there was resistance. And I understand you're saying, oh, he was slow to put his right hand on the wall and then at some point he lifted it. But that isn't necessarily resistance or a threat to the safety of officers in the context of both his testimony and what you see in the video. And isn't that the fact question that the district courts that we need to – that's a factual question. Was when he removed his – when he turned to talk, left all of his other body parts exactly as they had been aligned, but gestured with his hand, was that resistance such that the takedown was justified? I don't understand how we can decide that here. Right. And that's what I'm saying is this wasn't a – I know you're trying to consolidate this argument. This wasn't an order to say, hey, put your hand in a post-op. It was to put your hand – No, I understand. So the thing he did was not what he was demanded to do.  But does that mean – is anything that you do that is not what you were demanded to do resistance that warrants a takedown? Not anything. Again, the totality of everything he said – We have to see whether it actually can be interpreted as resistance and whether it can be interpreted as a threat to the safety of the officer. Well, I think in the briefs, one of the officers testified that the reason he overheard Howe continually saying, put your hand on the wall, put your hand – Okay, but the hand was on the wall. We all agree the hand got to the wall. But they did not over-gesture toward the wall. Okay, but once the hand was on the wall, you can't, like, leverage all the things that happened before to say, okay, now we can take him down, right? So his hand's on the wall. I'm not leveraging or saying we need to consider all those underpinnings.  Part of the totality. Right. Guy sneezes and reflexively puts his hand on his nose when he sneezes. Hand comes off the wall. Takedown? Well, now we're in an issue of the Pearson case of issue of fact or qualified immunity by the mistake of fact or the mistake of law. Okay, but that's going to be a factual question. Isn't that going to be a question on – I mean, I don't think the question before us now is whether qualified immunity might ultimately apply. The question before us now is whether he's entitled to summary judgment on qualified immunity. Correct, Your Honor. And again, what I'm trying to say is a lot of what Judge Ball did was the layer over a lot of these facts, even the things that occurred at Coney's Diner. He's argumented it. I've submitted the videos. You can see him yelling at police officers. So again, under feelings of the environment, we've got to look at everything. If a district court says there's disputed issue of fact or whether there's any resistance at all, we don't have jurisdiction to review that. If we determine what the disputed issues of fact are not material, then we have jurisdiction. Or if there's a video that conclusively establishes otherwise, then the Supreme Court has said you can do that. Neither of those things are true here. It is material whether or not he resisted at all. And the video is inconclusive on that. So why do we have jurisdiction? Because of the plaintiff's testimony. All right. If he testified, he did not comply with various rules. All right. Let's hear from Mr. Johnson, and you have your two minutes in rebuttal. Good morning, Your Honor. For the record, I'm Terry Brown. I'm the Justice of the District Court. I represent the Pelley-Hundada community. Judge, in this particular case, this court does not have jurisdiction. The court already indicated with questions that there are disputed facts in this particular case. Clearly, in terms of the question of whether my client was resisting or not, he complied, put his left hand on the wall, put his right hand on the wall. Ten seconds later, he put his right hand on the wall. Also, presently thereafter, they'll arm or take them. But before you get to that, the issue is the video does show that he takes the arm off the wall. So the argument is, at least, that there is some – that demonstrates some level of resistance when you're told, place your hands on the wall, which he said in his deposition he was told to place his hands on the wall, and he took it off, that that is some level of noncompliance or resistance. So what's your response to that? The issue is whether or not you can assert that as a threat. The Jones decision basically is the playbook, is the guide, but it's certain. You cannot use significant force in this scenario. You cannot. But Jones said if there's no resistance. So that's – the point is – the argument is that that's some level of resistance, which allows for some use of force to get his hands back on the wall. That's the argument. Well, I indicated there's a lot of different questions that you can interpret about why he did that. During this time, we have some young folks that are very demonstrative of his hand. But I think the court needs to look at is the fact that his left hand was on the wall, his feet was aligned. He didn't move as if he was going to escape. And if you look at the fact that with these particular charges, they were misdemeanor in nature. It wasn't a serious crime. So if you look at the totality of the circumstances from the time when he was brought into the booking room, he complied, took his shoes off, he walked in towards the fence and to the wall. I think if you look at it in your own totality of the circumstances, you have the fact that there was an issue in terms of him trailing. We had in that position Dr. Courchet indicating these type of situations. He was on his stomach in a prone position for almost three minutes. And he, in our expert testimony, indicated that there are times when an individual like this cannot breathe. But then after that, he stayed there. He didn't move. I think that if you look at the Jones decision, the Jones decision should guide this report in terms of that Judge Paul decision was correct. She analyzed in terms of Grand Court of Connors. She looked at it in terms of the armbar takedown. She looked at the fact that he was lifted up from the handcuffs. It's a disputed fact, brother. Am I trying to just run an opportunity to go in front of a jury and have this trial? I don't think the court has jurisdiction. Do I have any more questions? All right. Thank you. All right, Mr. Kambizak, you have that. Yeah, I wanted to pick up on the jurisdiction question, which I cited in my brief. Even where a court finds material disputed issues of fact includes jury judgment on qualified immunity, an interlocutory deal is still appropriate for the pretension to be testing the existence of a disputed material fact. Or we're implied enough of a plaintiff's version, and I cited these cases in my brief. So we would argue we do have jurisdiction, because that's exactly what we're saying. We say the district court got it wrong in their analysis in concluding there was a disputed issue of material fact. All right, that would present an issue of law. The question is, is there an issue of fact that remains? If there were no issue of fact and there were purely a question of law as to whether the client's are entitled to qualified immunity, I think you're right. But the question is whether there's an issue of fact as to whether he was or was not resistant. That's what the court found. We're saying that's not appropriate under the jurisdiction standard. It's a base for us to file this into law. Well, you have to be right that there's no other conclusion that can be drawn from watching the video that he was resistant. The plaintiff said that's what I'm solely relying on. And if you're wrong about that, then it's a dismissal because there's no jurisdiction. If I'm wrong about that, I would agree with you. But I believe that I cite focused on just the plaintiff's testimony in the video and said, based upon this version, we're entitled to qualified immunity. You've made that quite clear. I'm sorry? You've made that quite clear. Thank you. The other thing I did want to note in rereading this deposition transcript on page DA59, he says he struggled with his right arm before being taken down. So I just wanted to highlight that to the court. Also, the fact that he had not been patted down for weapons. So there's always a safety concern there. I think I briefly hit this. We usually, Jones v. Trubig, Trubig is distinguishable because here, in that case, the court found that the plaintiff was not resisting at the time of the second taser. Here is our position. He was resisting all the way until they took him down. So it's a little bit different. Also, in that decision, Judge Bianco has talked about why a taser is a significant use of force on page 226 in terms of being compliant. In our position, that, I think, counts as not being compliant. This is simply trying to control a noncompliant suspect. So we would say it's distinguishable. Now, what purpose did picking him up by the handcuffs serve as opposed to lifting him up by his shoulder? So the one thing I did want to note, and I did get in the Jaffee v. Sterl case, found a similar circumstance to be reasonable. So, again, that means he was not clearly resisting. Was that an individual who was not resisting? Correct. That's her position. In the Jaffee v. Sterl case, she was picked up, I think, by the chains. And, again, the officers disputed that. And, of course, even though it probably wasn't the best thing, it's not unreasonable. So that brings us into he was not clearly established that lifting him up by his handcuffs was— Did that case involve no resistance? Not completely. I think there involved resistance, but at the time that this occurred, the plaintiff's position was that it wasn't. You referred multiple times in your briefing to the offensive language he used and directed towards the officers. And I was interested in that. Is it your position that calling the officers' names is a factor that can support the use of force? Interesting question. I think I researched this issue years ago. I don't know the current state of the law on that. From memory, I thought that is part of it, whether the suspect is argumentative, whether you're using propane language. It's part of the totality of the circumstances that we look at to determine the level of force, which, again, goes back to Felix. We look at everything to determine what may have seemed innocent before might not be innocent later. And I think that's kind of what Felix was getting at. So to repeat your question directly, I don't know the current state of the law on that. All right. All right. Thank you. Thank you, both, for your sort of decision. Have a good day.